**NOT PRECEDENTIAL**

UNITED STATES COURT OF APPEALS
FOR THE THIRD CIRCUIT
_____

No. 14-3691
_____

UNITED STATES OF AMERICA

v.

RAHIM MCINTYRE, a/k/a KING KOBRA, a/k/a KOBE

Rahim McIntyre,
                    Appellant
_____

APPEAL FROM THE UNITED STATES DISTRICT COURT
FOR THE EASTERN DISTRICT OF PENNSYLVANIA
(D.C. Crim. No. 2-13-cr-00361-001)
District Judge:  Honorable Harvey Bartle, III
_____

Submitted Under Third Circuit LAR 34.1(a)
June 26, 2015
_____

Before: CHAGARES, KRAUSE and BARRY, <u>Circuit Judges</u>

(Opinion Filed: July 15, 2015)
_____

OPINION[*]
_____

_____

[*] This disposition is not an opinion of the full court and pursuant to I.O.P. 5.7 does not constitute binding precedent.

BARRY, *Circuit Judge*

Rahim McIntyre appeals his conviction and 262-month sentence arising from his prominent role in a prostitution venture, specifically his conviction in April 2014, following a jury trial, of two counts of sex trafficking and one count of attempted sex trafficking, in violation of 15 U.S.C. §§ 1591 and 1594(a). The District Court denied McIntyre's post-trial motions for a judgment of acquittal under Fed. R. Crim. P. 29 and for a new trial under Fed. R. Crim. P. 33, a decision he now challenges essentially on the basis that insufficient evidence supported his conviction. McIntyre also argues that his sentence was improperly increased by a statutory amendment that was only intended to apply to child victims, and, relatedly, that the statute under which he was sentenced was the wrong one to apply because his victims were adults. We will affirm.[1]

I.

In exercising our review of the District Court's denial of McIntyre's Rule 29 motion, we ask "'whether, after viewing the evidence in the light most favorable to the prosecution, *any* rational trier of fact could have found the essential elements of the crime beyond a reasonable doubt.'" *United States v. Caraballo-Rodriguez*, 726 F.3d 418, 424-25 (3d Cir. 2013) (en banc) (quoting *Jackson v. Virginia*, 443 U.S. 307, 318-19 (1979)).

Under Rule 33, which permits the grant of a new trial "if the interest of justice so requires," the District Court "can order a new trial on the ground that the jury's verdict is contrary to the weight of the evidence only if it 'believes that there is a serious danger

---

[1] The District Court had jurisdiction under 18 U.S.C. § 3231. We have jurisdiction under 18 U.S.C. § 3742(a) and 28 U.S.C. § 1291.

that a miscarriage of justice has occurred—that is, that an innocent person has been convicted.'" *United States v. Johnson*, 302 F.3d 139, 150 (3d Cir. 2002) (quoting *United States v. Santos*, 20 F.3d 280, 285 (7th Cir. 1994)). We review the Court's decision that this standard was not met for abuse of discretion.

At the time of the offenses charged in Counts Two and Three (attempted sex trafficking and sex trafficking, respectively), § 1591(a) provided that whoever knowingly:

> (1)    in or affecting interstate or foreign commerce . . . recruits, entices, harbors, transports, provides, obtains, or maintains by any means a person; or
>
> (2)    benefits, financially or by receiving anything of value, from participation in a venture which has engaged in an act described in violation of paragraph (1),
>
> knowing, or in reckless disregard of the fact, that means of force, threats of force, fraud, coercion . . . , or any combination of such means will be used to cause the person to engage in a commercial sex act, or that the person has not attained the age of 18 years and will be caused to engage in a commercial sex act, shall be punished as provided in subsection (b).

At the time of the offense charged in Count One (sex trafficking), § 1591(a) provided, in relevant part, that a defendant who acted in the manner described in paragraph (1) or (2), "knowing that force, fraud, or coercion" would be used to cause a person to engage in a commercial sex act, was subject to the punishment in § 1591(b).[2]

McIntyre challenges only the sufficiency of the evidence that he knew that force, fraud, or coercion (as to Count One), or that force, threats of force, fraud, coercion or any

---

[2] Additionally, "maintaining" a person was not then among the acts listed in § 1591(a)(1).

3

combination thereof (as to Counts Two and Three) would be used to cause his victims to engage in a commercial sex act. In a similar vein, for purposes of his Rule 33 motion, he argues that the verdict was against the weight of the evidence with respect to this essential element of the offense.

Having reviewed the evidence presented at trial, we conclude that the denial of both motions should be affirmed. We note, in particular, that three women who worked as prostitutes for McIntyre at different times testified to being beaten by him or being present when he beat other women who worked for him.[3] They further described being strictly controlled by McIntyre, even as to their purchases of necessities such as food, and

---

[3] K.W., the subject of Count One, testified that she witnessed McIntyre beat "Lauren Love" with the heel of a shoe she had purchased without his permission. McIntyre's attack drew blood and left Love, his "bottom bitch" (the highest-ranking and most loyal prostitute in McIntyre's "business"), with scratches on her face, arms, back, and ribcage. K.W. also testified that she witnessed another attack on Love, and that McIntyre let K.W. know that if she did not want the same treatment, she should "shut [her] fucking mouth." (Supp. App. 23.)

L.D., the subject of Count Two, testified that during a car ride to what she thought was Massachusetts, McIntyre grabbed her by the hair, pulled her to his lap, screamed at her, and, when she talked back, punched her in the face with a closed fist after she challenged him for "disrespect[ing]" another woman in the car. (*Id.* at 87.) He also confiscated L.D.'s cell phone, and when they arrived, expected her to engage in prostitution. She escaped when a putative customer drove her to the bus station and bought her a ticket back to Philadelphia.

V.P., the subject of Count Three, eighteen, homeless, and on drugs, testified that McIntyre would hit her for returning from "dates" with too little money or for "disrespecting him in any type of nature." (Supp. App. 152.) She further described an incident in which McIntyre beat her with a metal hanger on her legs and feet after she, tired, took a cab home against his wishes, that he woke her up by hitting her in the face when she brought home too little money, and that he beat her after she had a dispute with a drug dealer.

4

that they continued to engage in prostitution for him despite their fear of him.[4]

McIntyre argues that none of his actions caused or were aimed at causing his victims to engage in commercial sex acts or punished them for not doing so; instead, he was retaliating against them for other behaviors. He says, for example, that he hit L.D. because she scolded him, and struck V.P. because she did not bring home enough money. Further, he posits, his beating of Love could not support a finding that he used the necessary force, fraud, or coercion on K.W.

Section 1591(a) does not require the direct cause-and-effect connection McIntyre posits. Even before a 2008 amendment added "threats of force" as a prohibited act under § 1591, the law prohibited using "coercion," which is defined to include "threats of serious harm to or physical restraint against any person," and "any scheme, plan, or pattern intended to cause a person to believe that failure to perform an act would result in serious harm to or physical restraint against any person." *See* 18 U.S.C. § 1591(c)(2)(A)-(B) (Supp. V 2006); 18 U.S.C. § 1591(e)(2)(A)-(B) (2012). The witnesses' testimony demonstrated, at minimum, "coercion" that was used to cause them to engage in commercial sex acts.

McIntyre's argument that two of the witnesses had credibility problems is equally

---

[4] K.W., sixteen at the time of her involvement, described a controlling environment in which "[t]here was no freedom" and McIntyre had to be consulted for everything—even by Love, who McIntyre paints in his brief as being K.W.'s primary contact with the venture. (Supp. App. 26.) K.W. testified that she escaped in the middle of the night when the others were sleeping. K.W. and V.P. both testified that McIntyre kept all of their earnings from their prostitution activities.

unavailing. Defense counsel explored those issues at trial, and how the jury resolved the questions counsel raised was a matter reserved to its judgment. *United States v. Miller,* 527 F.3d 54, 60 (3d Cir. 2008) (in conducting sufficiency-of-the-evidence review, this Court does not weigh evidence or determine credibility of witnesses); *see also United States v. Salahuddin*, 765 F.3d 329, 346 (3d Cir. 2014) (jury was made aware of witness's biases and inconsistences in his testimony at trial; "[e]quipped with this knowledge, it was the jury's responsibility to decide whether or not to believe" the testimony), *cert. denied*, 83 U.S.L.W. 3855 (U.S. May 18, 2015) (No. 14-654). Even presented with the purported credibility issues, there was sufficient evidence for a rational juror to conclude that the Government met its burden of proof; there is, moreover, no "serious danger that a miscarriage of justice has occurred," and the District Court did not abuse its discretion in concluding as much. We, therefore, reject McIntyre's challenge to the denial of his motions for a judgment of acquittal or a new trial.

## II.

McIntyre also challenges his sentence, arguing that because the Adam Walsh Child Protection and Safety Act of 2006 (the "Act")[5] targeted crimes against children, its "increased penalties . . . should not apply to [him] because the women named in the indictment were adults." (Appellant's Br. 26.) Assuming these "increased penalties" are the mandatory minimum terms the Act added to § 1591(b)[6]—15 years if the § 1591(a)

---

[5] Pub. L. No. 109-248, 120 Stat. 587.

[6] Perplexingly, McIntyre's brief relies on 18 U.S.C. § 2241(c) as the source of the increased penalties, but he was neither charged nor convicted under this statute. We

offense "was effected by means of force, threats of force, or coercion . . . or by any combination of such means" or if the victim was under 14, and 10 years if force, threats, or coercion was not used and the victim was between 14 and 17—the plain language of the statute defeats his argument. Counts Two and Three charge post-Act conduct, and when McIntyre was convicted of using force, threats of force, fraud, or coercion as to V.P., and attempting to do so as to L.D, he qualified for a 15-year mandatory minimum under the plain language of § 1591(b). Because we begin and end with a statute's plain language if it is clear, *United States v. Introcaso*, 506 F.3d 260, 264-65 (3d Cir. 2007), which it is here, what Congress supposedly intended when it passed the Act is irrelevant.[7]

Parenthetically, and only parenthetically, because McIntyre did not raise the matter to the District Court and does not raise it to us, we observe that before the Act, § 1591 included only maximum sentences: life or 40 years, depending on the manner in which § 1591(a) was violated. This version of § 1591(b) applies to Count One. Thus, although the District Court erred when it noted during sentencing that the mandatory minimum applied to all three counts, the error was certainly harmless because the Court sentenced McIntyre to 262 months on Count One, the bottom of the Guidelines range but well above the 180-month mandatory minimum and below the maximum (a life term, for a conviction based on the use of force, fraud or coercion); there is no indication that the

---

assume that he is revisiting an argument he made at sentencing with respect to § 1591. (*See* Supp. App. 292-93.)

[7] In any event, as we note below, there is no indication that the presence of mandatory minimums affected the District Court's determination of a sentence.

mandatory minimum influenced the Court's decision. *See, e.g.*, *United States v. Langford*, 516 F.3d 205, 215 (3d Cir. 2008) (for sentencing error to be harmless, "it must be clear that the error did not affect the district court's selection of the sentence imposed").

Finally, McIntyre argues that the District Court relied on the wrong statute because § 1591 only applies to victims who were minors, and his victims were adults.[8] While couched as a challenge to his sentence, McIntyre essentially rehashes an argument he made unsuccessfully in seeking to dismiss Counts Two and Three before trial, and it fares no better here. At all relevant times, § 1591 provided that a defendant must act **either** knowing that force, fraud, or coercion will be used to cause the victim to engage in a commercial sex act, **or** knowing that the person is under 18 and will be caused to engage in such an act. McIntyre surely qualified under the first category.

III.

We will affirm the Judgment of the District Court.

---

[8] K.W. was, as noted, not an adult, but the jury found that the Government had not proven McIntyre knew that; it found, however, that he had violated the statute under the "force, fraud, or coercion" prong of § 1591(a) with respect to her.